Ilseby, J.
On tbe 10th. March, 1862, the plaintiffs and defendants in this suit, entered into a written contract of the following tenor:
“Carroll, Hoy & Co. have this day sold to D. Kelham & Co. one hundred bales of cotton of the crop of the estate of Fielding Davis, in the county of Issaquena, Mississippi, at the rate of eight cents per pound, for Liverpool middling, with an additional half cent per pound on each grade of quality above, and a reduction of a half a cent per pound on each grade of quality below Liverpool middling. The cotton to remain on the plantation at the risk of the purchasers until called for by them, when the agent of the estate of F. Davis, shall deliver it on the bank of the Mississippi river, at the usual shipping point of the estate’s cotton.
The cotton to be sampled and weighed by the agent of the estate. Classification to be determined by a competent person, selected by purchasers and the sellers, and to be paid for on the rendition of the invoice. Thp cotton is to remain on the plantation free of storage.”
(Signed) “ Carroee, Hoy & Co.”
(Signed) “D. Kebham & Co.”
*112 On the 20th of the same month of March, 1862, the defendants acknowledged to have received from the plaintiffs two thousand dollars on account of the sale of one hundred bales of cotton on plantation, at their (the plaintiffs') risk; and, on the 14th of April, 1862, the defendants again acknowledged to have received from the plaintiffs fifteen hundred dollars on account of the same cotton.
, The plaintiffs, after putting the defendants in default, and offering to perform their part of the contract, now demand in this suit, either the specific performance of it, with twenty-five thousand dollars damages, or in the event of the defendants establishing a legal and 'sufficient cause to justify their non-compliance, then that the defendants, Carroll, Hoy & Co., and the individual members of the firm, be condemned, in solido, to pay to the plaintiffs, the sum advanced; say, three thousand five hundred dollars, with legal interest from 29th August, 1865.
From a judgmentin favor of the defendants, the plaintiffs have appealed.
It is proved satisfactorily that, previous to the weighing and classification of the cotton sold, the whole, crop of the Davis plantation was destroyed by vis major, and the main question presented in this case is, at whose risk was the cotton sold ? And, in this is involved the inquiry, whether any and what effect is to be given to the clause in the agreement that “the cotton is to remain on the plantation at the risk of the purchasers until'called for by them.”
It was evidently the intention of the contracting parties that the risk, which under article 2433 of the Civil Code would have attached to the sellers, until the cotton sold was weighed, should be borne by the buyers, from the moment of the sale.
No other rational construction can be put upon this particular engagement on the part of the purchasers; as, after the weighing, the law would have put the thing sold at their risk.
And it was competent for the parties to contract specially as to this risk. On this point, says Duveryier, 1, page 94, No. 93: “Ildépend au surplus, des parties de modifier par leur volonté, la disposition qui attribue a la vente en bloc et a la vente au poids des effects différens: elles peuvent convenir que dans la derniere, les risques seront pour l’acheteur du moment du eontrat.”
In Goodwyn v. Pritchard, 10 An, 249, this Court seemed to recognize this doctrine, and would have applied it in that case, had the intention of the buyer to renounce or waive the benefit of the law, as presented in Art. 2433 C. C., been established beyond all doubt; while the purchasers in this case now pending, certainly did. Thq parties made a law unto themselves, founded on their ’mutual consent. Omne periculum ad emptorem pertinere. And there exist no causes known to us, for which it can be revoked. C. C., 2 — 1757,1895 and 1940; Eice vs. Schmidt, 11 La. 72.
Legal effect-must, therefore, be given to this stipulation, unless, in the very nature of things, it would be impossible to do so.
The plaintiffs contend that, in sales by weight, the property cannot be transferred, nor the risk assumed by the purchaser, until it is weighed; and, relying upon the opinions of Marcadé and other authors, they argue that t.o say that sales by weight are imperfect only in so far as relates to the risk, but are still translative of .ownership, would be to lay down an im *113 possible rule, and which would be repulsive to the very nature of things.
Marcad é frankly admits that most of the authors, understanding article 1583 of the Napoleon Code (our article 2433) restrictively, consider a sale by weight or measure, only imperfect as to the risk of the thing.
We do not deem it necessary now to attempt to reconcile, or choose between, these conflicting opinions; it has been usual for this Court to adopt the construction put by the Court of Cassation upon any textual provisions of the Napoleon Code; and on this point, we find an arret of that august tribunal, often referred to by the authors, confirming a judgment of the Cour de Limoges.
The Cour^pf Cassation says: “ Attendu Io, qu’aux termes de l’art. 1583 du Code Civil, la vente est parfaite entre les parties, et la propriété acquise de droit a l’achetenr des qu’on est convonu de la chose et du prix, quoique la chose n’ait pas encore été livrée ni le prix payé; que si l’article 1585 dispose que dans le cas ou la marchandise est vendue a la mesure, la vente n’est point parfaite jusqu’au mesurage, il explique que c’est en ce sens que la chose vendue est aux risques du vendeur, et il précise que l’acheteur pent demander la délivrance ou des dommages intéréts faute d’exécutiou; que conséquemment, loin de déroger au principe général établi par Part. 1583, il le confirme en disant que, méme en ce cas, la vente est parfaite A tous autres égards que les risques. Arrét du 11 Novembre, 1812, Sirey 1813, port 1, page 52.
But was the obligation assumed by the plaintiffs as to the risk of the cotton, such a lien de droit or vinculum juris, which it is possible for this Court to give legal effect to '? And this suggests the question: How could the quality of the cotton be determined, its different grades fixed, the precise number of pounds in each bale ascertained, so as to fix the price ? There might, certainly be cases in which it would be difficult to find a solution to these queries; but, in the present case, we do not deem the difficulties suggested insurmountable; indeed, we think they are overcome.
The sale comprised one hundred bales of the cotton of a certain plantation; the whole crop having perished. The bales of the crop of 1862, on that plantation, averaged a certain weight; the quality of the cotton was below middling; and the price per pound fixed, according to a standard — Liverpool middling, and for each grade above and below.
An estimate, at least approximate for the cotton sold, might be ascertained from this data.
The plaintiffs have advanced on,' or . for, the one hundred bales purchased by them, three thousand five hundred dollars, or about thirty-five dollars on, or for, each bale. This may fall short of, or exceed the contract price, and the plaintiffs were only bound for that; and if, which we deem hardly probable, they can show that they have paid too much, they may claim the repetition of the surplus. Art. 18, O. P. And that right will be reserved to them. It is therefore, ordered, adjudged and decreed that the judgment of the District Court, be so amended, as to reserve to the plaintiffs the right to claim judicially from the defendants any excess of money paid by the plaintiffs over and above the contract price of the one hundred bales of cotton purchased by them, by the contract dated 10th March, 1862, and that so amended, the said judgment be affirmed at the costs of the appellees.